UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

JEAN-CLAUDE OKONGO LANDJI,

Defendant.

**ORDER**

(S1) 18 Cr. 601 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

  Defendant Landji is charged with narcotics conspiracy on board a U.S. aircraft, in violation of 21 U.S.C. §§ 959(c), 959(d), 963, and 18 U.S.C. § 3238 ((S1) Indictment (Dkt. No. 39) Count One); and narcotics distribution on board a U.S. aircraft and by a U.S. citizen, in violation of 21 U.S.C. §§ 812, 959(c), 959(d), 960(a)(3), 960(b)(1)(B), and 18 U.S.C. §§ 3238 and 2 (id., Count Three).

  Landji was arrested in Croatia on October 30, 2018 (Mar. 20, 2020 Am. Govt. Ltr. (Dkt. No. 271) at 2), and was extradited to the United States in October 2019. (Mar. 17, 2020 Def. Ltr. (Dkt. No. 268) at 2) Landji was presented in this District on October 17, 2019 (see Dkt. No. 151), and was ordered detained on consent. (Id.; Dkt. No. 152) Landji now seeks release on bail.[1] (Mar. 17, 2020 Def. Ltr. (Dkt. No. 268); Mar. 23, 2020 Def. Ltr. (Dkt. No. 274)) The Government opposes his application. (Mar. 20, 2020 Am. Govt. Ltr. (Dkt. No. 271)) Trial is scheduled for June 15, 2020. (Feb. 25, 2020 Order (Dkt. No. 242))

---

[1] Landji has consented to having his bail application decided on the papers, and has waived his right to a hearing. (See Apr. 2, 2020 Def. Ltr. (Dkt. No. 285)) The Government also consents to having Landji's bail application decided on the papers. (See Apr. 2, 2020 Govt. Ltr. (Dkt. No. 283))

## I. LEGAL STANDARDS

The Bail Reform Act, 18 U.S.C. § 3142(g), directs courts to consider the following factors in determining whether pretrial release is appropriate:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the [defendant];

(3) the history and characteristics of the [defendant], including . . . the [defendant's] character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; . . . and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. . . .

18 U.S.C. § 3142(g).

In order for a defendant to be detained pending trial, the Government must demonstrate (1) by a preponderance of the evidence, that there are no conditions or combination of conditions that will ensure the defendant's return to court, or (2) by clear and convincing evidence, that there is no condition or combination of conditions that will reasonably assure the safety of the community.

## II. THE PARTIES' ARGUMENTS

### A. Defendant Landji

Landji argues that he should be released pending trial because (1) he poses no danger to the community; (2) he is an American citizen with family ties that are sufficient to ensure his appearance in court; (3) the Bureau of Prisons ("BOP") has cancelled all legal visits to the Metropolitan Correctional Center ("MCC"), where Landji is housed, which threatens his

2

Sixth Amendment right to counsel; and (4) because of his age and declining health, he is at risk of contracting the novel coronavirus ("COVID-19"), which has been declared a pandemic by the World Health Organization. (Mar. 17, 2020 Def. Ltr. (Dkt. No. 268) at 1)

Landji proposes release on the following conditions: a (1) personal recognizance bond in the amount of $150,000, co-signed by three financially responsible persons, including Landji's brother and niece, both of whom reside in Atlanta, Georgia; (2) home detention enforced by electronic monitoring; (3) travel restricted to the Southern District of New York and Georgia; and (4) any additional requirements the Court deems necessary. (Id. at 2) Landji does not propose a residential location where he would stay while on pretrial release, nor does he disclose who he would live with. (Id. at 2, n.1)

In the alternative, Landji seeks temporary release pursuant to either 18 U.S.C. § 3142(i) or 18 U.S.C. § 3145(c), due to his lack of access to counsel and the spread of COVID-19 within the MCC. (Id. at 3, 5)

### B. The Government

The Government opposes Landji's application for release on bail, arguing that (1) he poses a danger to the community and a serious risk of flight; and (2) the conditions at the MCC do not warrant his release. (Mar. 20, 2020 Am. Govt. Ltr. (Dkt. No. 271))

The Government contends that release pursuant to 18 U.S.C. § 3142(i) would not be appropriate, because Landji would not be released to "the custody of [a] United States marshal," and "has not identified any other 'appropriate person' in whose custody he would be placed." (Id. at 9) The Government contends that Section 3142(i) does not relieve courts of their obligation to determine whether a defendant is a danger to the community or a risk of flight,

3

and argues that Landji "has not offered a 'compelling reason' for temporary release" and has not demonstrated that "his release is . . . 'necessary for preparation' of his defense." (Id. at 8-9)

As to Section 3145(c), the Government argues that this provision is not applicable, because it applies only to defendants who are detained pursuant to 18 U.S.C. §§ 3143(a)(2) or (b)(2), having "been found guilty of an offense." (Id. at 8) (citing 18 U.S.C. §§ 3143(a)(2), 3143(b)(2))

## III. BAIL REFORM ACT ANALYSIS

### A. Nature of the Offenses Charged

As noted above, Landji is charged with narcotics conspiracy on board a U.S. aircraft and narcotics distribution on board a U.S. aircraft and by a U.S. citizen. ((S1) Indictment (Dkt. No. 39), Counts One, Three)  The Government charges that Landji participated in a scheme to traffic large quantities of cocaine supplied by co-defendant Cardona-Cardona from the western Sahara region of Africa – where Landji resides – to Europe, using U.S.-registered aircraft. (Mar. 6, 2020 Govt. Ltr. (Dkt. No. 254) at 2)

According to the Government, Landji owns a Gulfstream IIB airplane, which is registered in the United States.  Landji agreed to fly his airplane from Africa to Croatia with an initial shipment of cocaine.  This trip was designed as a test run for future transactions that would involve hundreds of kilograms of cocaine, including one planned shipment of 1,400 kilograms of cocaine. (Mar. 20, 2020 Am. Govt. Ltr. (Dkt. No. 271) at 1, 3; Mar. 6, 2020 Govt. Ltr. (Dkt. No. 254) at 2)  Co-defendant Cardona-Cardona planned to purchase a surface-to-air missile, a box of AK-47 assault rifles, and night vision goggles with the cocaine that Landji and co-defendant Adamu would be transporting to Croatia. (Mar. 20, 2020 Am. Govt. Ltr. (Dkt. No. 271) at 2; see also Cardona-Cardona Cmplt. (Dkt. No. 1))  Landji allegedly represented to confidential

4

Government sources that he could fly a "black flight," which the Government describes as a flight in which flight plans are either misfiled or not filed at all. During such flights, communication and safety equipment is deactivated in order to evade detection by law enforcement. (Mar. 20, 2020 Am. Govt. Ltr. (Dkt. No. 271) at 1-2) The Government will also offer evidence that at least a portion of a maritime shipment of 624 kilograms of cocaine that was interdicted by the U.S. Coast Guard in July 2018 was intended for delivery in west Africa, for later transmission to Europe in a flight operated by Landji and Adamu. (Mar. 6, 2020 Govt. Ltr. (Dkt. No. 254) at 2)

On October 30, 2018, Landji and Adamu flew Landji's aircraft into Zagreb, Croatia. A kilogram of cocaine was stored in the airplane's baggage compartment. Croatian law enforcement officers arrested Landji and Adamu when they landed in Zagreb and recovered the cocaine after searching the airplane. (Mar. 20, 2020 Am. Govt. Ltr. (Dkt. No. 271) at 2)

Landji is charged with two serious narcotics trafficking offenses. He faces a mandatory minimum sentence of ten years' imprisonment on each count, and a Sentencing Guidelines range that exceeds 25 years' imprisonment. (Id. at 6) Because Landji is charged with narcotics trafficking offenses, there is a presumption pursuant to 18 U.S.C. § 3142(e)(3) that no condition or combination of conditions will ensure his return to court and the safety of the community.[2]

---

[2] 18 U.S.C. § 3142(e)(3): "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed –
   (A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46. . . ."

5

B.     **Weight of the Evidence**

As to the weight of the evidence, it appears quite strong. Croatian law enforcement officers recovered a kilogram of cocaine from the airplane that Landji landed in Zagreb. (Id. at 2) The Government also represents that Landji participated in recorded meetings with confidential sources, during which Landji, the confidential sources, and Landji's co-conspirators discussed the logistics of transporting narcotics, including their plan to begin with a a "test" shipment of one kilogram of cocaine. In these recorded conversations, Landji represented that he had previously flown airplanes carrying narcotics. (Id. at 4) Landji also discussed a future flight involving as much as a ton of cocaine. (Id. at 5)

At trial, the Government expects to present

> testimony by witnesses, including individuals working at the direction of the Government, regarding the planned 1400 kilogram cocaine shipment and possible destinations for that shipment, which included western Saharan Africa; testimony regarding the interdiction of the maritime shipment of drugs recovered by United States Coast Guard Personnel; and testimony and recordings regarding defendant Cardona-Cardona's involvement in that shipment, to the extent that the planned shipment, or a portion thereof, was intended for delivery to western Africa to be flown to Europe by defendants Landji and Adamu.

(Mar. 6, 2020 Govt. Ltr. (Dkt. No. 254) at 2)

C.     **History and Characteristics of the Defendant**

Landji was born in Gabon and became a naturalized citizen of the United States in 2002. For the past four years he has lived with his wife – his fourth wife – and daughter in Mali. For the seven years before that, he lived in Gabon. Accordingly, he has not lived in the United States for more than ten years. His parents are deceased. Most of his eight siblings and twenty-three paternal siblings reside in Gabon. Most of the Defendant's thirteen additional children live in Senegal, France, and Gabon; three of his children live in the United States. The Defendant is a commercial pilot, and for the past four years he has operated an air transport business in Mali.

6

Prior to that, the Defendant worked for two airlines in Gabon for ten years. The Defendant has substantial assets in Africa. (PTS Rpt. at 1-2)

As to family in the United States, the Defendant's brother and niece live in Atlanta, Georgia, and he has a daughter in Los Angeles, California. (Def. Ltr. (Dkt. No. 268) at 2, 4; see also PTS Rpt.)

Landji does not contend that he has any family, community, residential, or employment ties to the Southern District of New York. Nor has he described his relationship with relatives living in Georgia and California. Based on the current record, there is no reason to believe that the Defendant's relatives in the United States have sufficient suasion over the Defendant to ensure his return to court. Landji has also not proposed any particular residence – or even state – where he would reside.

**D.     Danger to the Community**

As to danger to the community, the large-scale drug trafficking organization in which the Defendant was allegedly engaged raises danger concerns. Defendant has not provided any evidence to rebut this presumption. See 18 U.S.C. § 3142(e)(3)(A).

**E.     Conclusion**

Having considered the factors listed in the Bail Reform Act, the Court concludes that Landji poses an enormous risk of flight as well as a danger to the community. He has not rebutted the presumption that there is no condition, or combination of conditions, that can ensure his return to court and the safety of the community if he is released.

There is evidence that he was at the center of an international cocaine distribution conspiracy in which he – as the pilot transporting massive amounts of cocaine – was to play a leading part. There is compelling evidence against him, including highly incriminating tape recorded conversations and the kilogram of cocaine recovered from his plan in Zagreb, Croatia.

7

He has no ties to this District and compelling ties to Mali, where his wife and child are and where his business is. As someone who has worked as an international commercial pilot for decades, the Defendant is obviously highly mobile. And while the Defendant is a naturalized U.S. citizen, he has not lived in the United States in more than ten years. The Defendant faces an enormous sentence if convicted, including a ten-year mandatory term of imprisonment. Finally, the United States has no extradition treaty with Mali. See Extradition Agreements, U.S. Code, House of Reps., https://uscode.house.gov/view.xhtml?req=granuleid:USC-prelim-title18-section3181&num=0&edition=prelim (last accessed Apr. 1, 2020).

For all of these reasons, the Court concludes that the Government has met its burden of demonstrating that there is no condition or combination of conditions that can ensure the return of the Defendant and the safety of the community if he is granted pretrial release.

### IV. "EXCEPTIONAL" OR "COMPELLING" CIRCUMSTANCES

Landji contends that – regardless of the factors under the Bail Reform Act – he is entitled to release under either 18 U.S.C. § 3145(c) or 18 U.S.C. § 3142(i), due to the ongoing COVID-19 pandemic. Landji asserts that pretrial release is necessary to protect his Sixth Amendment right to counsel, since "BOP has responded to the spread of this deadly virus by canceling all outside visitation – including legal visits – to the [MCC]." (Mar. 17, 2020 Def. Ltr. (Dkt. No. 268) at 1) Landji also asserts that at 58 years old and in declining health, he is "particularly vulnerable to serious illness." (Id.) Landji contends that these circumstances constitute "exceptional reasons" for release pursuant to § 3145(c) or "compelling reason[s]" for temporary release within the meaning of § 3142(i). (Id. at 3, 5)

#### A. 18 U.S.C. § 3145(c)

18 U.S.C. § 3145(c) provides that "[a] person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section

8

3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3143 applies to defendants who are pending sentence or appeal. See 18 U.S.C. § 3143(a) (referring to "a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence"); 18 U.S.C. § 3143(b) (referring to "a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari").

Landji argues that "'exceptional circumstances' exist such that [his] continuing detention at the MCC 'would not be appropriate' within the meaning of 18 U.S.C. § 3145(c)." (Mar. 17, 2020 Def. Ltr. (Dkt. No. 268) at 1) Section 3145(c) applies to "defendant[s] pending sentence or appeal," however, and Landji is a pre-trial detainee.

Even if 18 U.S.C. § 3145(c) applied to pretrial detainees, this Court would not find that "exceptional circumstances" exist here. As discussed above, there is an overwhelming case for detention, and the risk to Landji posed by the COVID-19 virus is not sufficient to outweigh the factors favoring detention.

### B.  18 U.S.C. § 3142(i)

18 U.S.C. § 3142(i) provides that a "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." Landji argues that the threat COVID-19 poses to his health provides a "compelling reason" for his release. He also contends that his lack of access to counsel constitutes a "compelling reason" for release. (Mar. 17, 2020 Def. Ltr. (Dkt. No. 268) at 4-5)

9

### 1. Danger from COVID-19

There is no question that COVID-19 presents an enormous risk to inmates currently in detention.

> Though the BOP has admirably put transmission mitigation measures in place, see Federal Bureau of Prisons, Federal Bureau of Prisons COVID-19 Action Plan, https://www.bop.gov/resources/news/20200313_covid-19.jsp, in the event of an outbreak at the [MCC] (where the Defendant is currently being detained), substantial medical and security challenges would almost certainly arise. A comprehensive view of the danger the Defendant poses to the community requires considering all factors – including this one – on a case-by-case basis.

United States v. Stephens, 2020 WL 1295155, at *2 (citing United States v. Raihan, No. 20-cr-68 (BMC) (JO), Dkt. No. 20 at 10:12–19 (E.D.N.Y. Mar. 12, 2020)).

Landji, who is 58 years old, has not demonstrated that he suffers from any condition that makes him especially vulnerable to COVID-19, such as a respiratory condition or a history of heart disease. Instead, he asserts that he is "sleep deprived" and "has suffered a dramatic loss in weight," which leaves him "particularly vulnerable to serious illness." (Mar. 17, 2020 Def. Ltr. (Dkt. No. 268) at 1) There is no basis for this Court to find that Landji is more susceptible to COVID-19 than other inmates, however. Nor has Landji alleged that he has been exposed to the virus or that he has not received appropriate medical care. See United States v. Marte, No. 19-cr-795 (SHS), 2020 WL 1505565, at *1 (S.D.N.Y. Mar. 30, 2020) ("Pursuant to 18 U.S.C. § 3142(i), the Court concludes that, in the absence of any evidence that defendant has a special condition making him substantially vulnerable to Covid-19, the pandemic alone, which is affecting the community in its entirety, is not a compelling reason warranting release at this point in time."); see also United States v. Steward, No. 20-cr-0052 (DLC), 2020 WL 1468005 (S.D.N.Y. Mar. 26, 2020). Landji "simply makes a generalized argument that the fact of the ongoing pandemic itself is enough to justify temporary release." United States v. Chandler, 2020 WL 1528120, at *2 (citing United States v. Hamilton, No. 19-cr-54-01 (NGG),

10

2020 WL 1323036, at *1 (E.D.N.Y. Mar. 20, 2020)). This argument is not sufficient to justify pretrial release under the circumstances of this case.

### 2. Sixth Amendment Argument

Landji states that the MCC has been closed to all outside visitors since February 27, 2020, and that his Sixth Amendment right to counsel has been violated. Landji contends that the only remedy for this constitutional violation is immediate pretrial release. (Mar. 17, 2020 Def. Ltr. (Dkt. No. 268) at 4; see also 18 U.S.C. § 3142(i))

The spread of COVID-19 throughout New York State – and the country – has compelled the Bureau of Prisons to suspend all visits, including legal visits. United States v. Stephens, No. 15-cr-95 (AJN), 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020) (citing Federal Bureau of Prisons, Federal Bureau of Prisons COVID-19 Action Plan, https://www.bop.gov/resources/news/20200313_covid-19.jsp (explaining that "legal visits will be suspended for 30 days" nationwide); see also Federal Bureau of Prisons, COVID-19 Action Plan: Phase Five, https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp). Inmates do have access to counsel, however. They receive 500, instead of 300, minutes of phone time per month. Federal Bureau of Prisons, Federal Bureau of Prisons COVID-19 Action Plan, https://www.bop.gov/resources/news/20200313_covid-19.jsp. And prison officials have stated that "case-by-case accommodation will be accomplished at the local level and confidential legal calls will be allowed in order to ensure inmates maintain access to counsel. Attorneys seeking an in-person visit with their client or a confidential call should contact the institution Executive Assistant . . . or contact the appropriate Consolidated Legal Center for the BOP institution." Id.

Although the Court is concerned about Landji's access to counsel, it cannot find that BOP's decision to suspend all legal visits for 30 days is unreasonable in light of the global pandemic and the threat it poses to inmates, residents of New York City, and the nation at large.

11

Moreover, Landji has not identified an "appropriate person" into whose custody he could be released, nor has he shown a compelling reason for his release. As stated above, he is a danger to the community and poses a significant flight risk. Given these concerns, Landji's application for bail pursuant to 18 U.S.C. § 3142(i) is denied.

## CONCLUSION

Landji's application for pretrial release is denied. Given the rapidly evolving nature of this health crisis, however, and the challenges it poses to prison facilities, see Federal Defenders of New York, Inc. v. Federal Bureau of Prisons, No. 19-1778, slip op. at 26-27 (2d Cir. Mar. 20, 2020), his motion is denied without prejudice to renewal in the event that circumstances materially change.

Dated: New York, New York
April 5, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge